**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 14-cv-00190-RM

RENEE PAULETTE WILLIAMS,

 Appellant,

v.

TIMOTHY DEAN DORN,

 Appellee.

___

**OPINION AND ORDER**
___

  On January 23, 2014, appellant Renee Paulette Williams ("appellant") appealed the U.S. Bankruptcy Court for the District of Colorado's ("the Bankruptcy Court") entry of judgment in favor of appellee Timothy Dean Dorn ("appellee"). (ECF No. 2.) In her Opening Brief, appellant raised the following issues for judicial review: (1) whether the Bankruptcy Court applied the proper legal standard in determining the intention of the district court in creating the debt obligation to appellee; (2) whether the Bankruptcy Court was in error to determine that the state court had the discretion to declare the division of debt as 'maintenance'; (3) whether the Bankruptcy Court considered the hold harmless language in reviewing the intention of the Domestic Court's orders; (4) whether the Bankruptcy Court reviewed all pertinent facts in determining the 'nature of support'; and (5) whether the Bankruptcy Court misinterpreted the legal standard concerning the state court's allocation and

classification of debt in domestic cases. (ECF No. 11 at 6-7.)[1] Appellee has filed a Response Brief (ECF No. 12), and appellant has filed a Reply Brief (ECF No. 13).

With this matter now being fully briefed, and for the reasons discussed herein, this Court AFFIRMS the decision of the Bankruptcy Court.

**I.     Procedural Background**

On September 11, 2012, appellee filed a voluntary petition for relief under chapter 13 of the U.S. Bankruptcy Code ("the Bankruptcy Code"). (ECF No. 8-1 at 41.) In the Schedules attached to appellee's chapter 13 petition, he listed, among other things, numerous credit card debts and a personal and business loan from Patrick Williams. (*Id*. at 68-73.) Those debts have become the principal source of the parties' conflict. More specifically, on January 2, 2013, appellant instituted an adversary proceeding against appellee, alleging that appellee owed appellant $94,334.00 in marital debt ("the martial debt"), including 50 percent of a $82,668.00 debt owed to Patrick Williams (appellee's brother), 100 percent of approximately $28,000.00 in marital credit card debt, and 50 percent of a $50,000.00 debt owed to the business "To The Rescue." (*Id*. at 3-5.) Appellant further alleged that the marital debt constituted a domestic support obligation pursuant to permanent orders entered during a divorce proceeding between appellant and appellee. (*Id*. at 4-5.) Appellant sought a monetary judgment and an order declaring the marital debt to be non-dischargeable in appellee's bankruptcy proceeding. (*Id*. at 5.)

On January 9, 2014, the Bankruptcy Court held a hearing with respect to appellee's adversary proceeding at which appellee was the sole testifying witness. (ECF No. 8-2 at 3-40.) After hearing

---

[1] The Court uses the page numbers assigned by the CM/ECF system in the top right-hand corner of the relevant pleading, rather than any other page number that may appear elsewhere of said pleading.

appellee's testimony and reviewing the written exhibits, the Bankruptcy Court found that the marital debt was not in the "nature of support," and thus, was not a non-dischargeable debt under 11 U.S.C. § 523(a)(5) ("§ 523(a)(5)"). (*Id*. at 139-142.)

## II. Legal Standard

The parties agree that a Bankruptcy Court's findings, concerning the nature of a divorce-ordered obligation, can be set aside only if they are clearly erroneous. *In re Goin*, 808 F.2d 1391, 1393 (10th Cir. 1987); (*see also* ECF No. 11 at 7; ECF No. 12 at 4). In addition, the party seeking non-dischargeability of an obligation (here, appellant) has the burden of proving that the same was in substance support. *In re Sampson*, 997 F.2d 717, 723, 725 (10th Cir. 1993).

Notwithstanding the parties' agreement as to that standard of review, appellant also asserts that a *de novo* standard of review is appropriate in this case. Specifically, appellant asserts that the Bankruptcy Court did not apply the proper test in determining whether the marital debt was a domestic support obligation for purposes of the Bankruptcy Code. (ECF No. 11 at 12-23.) Appellant asserts that the Bankruptcy Court failed to consider the intent of the divorce court or the substance of the obligation. (*Id*. at 15.) However, this is simply not an accurate description of the Bankruptcy Court's oral decision. The transcript from the hearing on appellant's adversary proceeding makes clear that the Bankruptcy Court was more than fully aware of the applicable test, and actually applied that test. Notably, the Bankruptcy Court repeatedly stated that the purpose of the hearing was to attempt to discern the intent of the divorce court in ordering the division of the marital debt. (*See* ECF No. 8-2 at 21:14-17, 36:12-17, 38:20-39:3.) As appellant asserts, the intent of the divorce court is the "primary factor" in determining whether an obligation is in the nature of support. (ECF No. 11 at 15-16.) Given that the intent of the divorce court was clearly the primary

focus of the Bankruptcy Court, it cannot be said that the Bankruptcy Court applied the wrong legal test.  Therefore, appellant's attempt to have the Bankruptcy Court's decision reviewed under a *de novo* standard is rejected.

Instead, the issue before this Court is, as the Tenth Circuit Court of Appeals explained in *Goin*, whether the "most cogent reasons in the record" dictate that the Bankruptcy Court's decision be disturbed.  *In re Goin*, 808 F.2d at 1393 (quotation and internal quotation omitted).

## III.     Discussion

Here, there are no reasons to disturb the Bankruptcy Court's decision, let alone cogent ones. As appellant asserts, the pertinent inquiry is directed to (1) the intent of the divorce court, and (2) the substance of the obligation.  (ECF No. 11 at 14-15.)  With respect to the divorce court's intent, appellant asserts that intent for the obligations to be support is discernible from (1) the divorce court ordering the parties to hold each other harmless from the assigned obligations, and (2) the divorce court assigning appellee more than $87,000.00 of the $129,000.00 in marital credit card debt.  (ECF No. 11 at 22-24.)

The Court begins with the 'hold harmless language' argument.  Simply put, the Court cannot fathom appellant's reasoning with respect to this argument, at least not in the context of domestic support.  First, it is notable that the divorce court ordered *both* appellant and appellee to hold each other harmless from their assigned obligations.  (*See* ECF No. 11-1 at 70.)  Thus, to the extent this language indicates an intent that the corresponding obligation be considered support, it cuts both ways.  In other words, if the divorce court intended appellee's obligations to be support due to this language, the court also intended appellant's obligations to be support.

4

Second, appellant's argument is apparently premised on the importance appellee's counsel during the divorce proceeding placed upon the exclusion of 'hold harmless' language from the permanent orders. Notably, in concluding arguments, appellee's counsel requested that the divorce court not include indemnification or 'hold harmless' language in the permanent orders. (*Id*. at 110:17-111:1.) Contrary to appellant's suggestion, the reason appellee's divorce counsel gave for this request is far from clear:

> But we asked the Court and I'm going to reiterate to the Court that this Court needs to not put in an indemnification clause or hold harmless language in this. These parties are bankrupt and they have to be able to decide for themselves. I don't think either party has made that decision. I certainly can't speak for Ms. Williams, but her testimony is that she doesn't want to. Mr. Dorn's testimony is also that he doesn't want to, but they need to be free to make that decision if they have to, because at this point they are.

(*Id*.)

Appellant asserts that this plea from counsel "relay[ed] that the attorney believed that the hold harmless or indemnification language would create an obligation that would not be dischargeable in bankruptcy." (ECF No. 11 at 23.) Whether that is the case or not, it was not based upon the obligations being in the nature of support. No such basis is evident from counsel's words. Rather, to the extent anything is apparent, it appears that appellee's counsel believed that, if 'hold harmless' language was used in the permanent orders, appellee and/or appellant would not be able to pursue bankruptcy protection. After all, appellee's counsel did say that the parties "need to be free to make that decision if they have to." "[T]hat decision" being referred to is the decision to file for bankruptcy protection or not. (*See* ECF No. 11-1 at 110:1-111:1.) For whatever reason, appellee's divorce counsel believed that 'hold harmless' language would impede the decision making process.

As noted *infra* at footnote 4, this may be a reasonable belief as to 11 U.S.C. § 523(a)(15) ("§ 523(a)(15)"), but it has no relevance as to § 523(a)(5).

In that regard, even if appellee's counsel believed that adding 'hold harmless' language would create a non-dischargeable obligation in bankruptcy, it is notable that appellant does not assert that this obligation would be non-dischargeable due to the language magically converting it into a domestic support obligation. In other words, appellant, at no point, explains why hold harmless language should convert an obligation, or be a factor in converting an obligation, into the nature of support. (*See* ECF No. 11 at 23-24.) This Court can certainly not discern why. Instead, the purpose of the hold harmless language, as is the case in most situations involving such language, is to ensure that the party being held harmless is not later held harmed by another party's failure to perform. *See* Black's Law Dictionary 848 (10th ed. 2014) (defining "hold harmless" as "[t]o absolve (another party) from any responsibility for damage or other liability arising from the transaction").

Despite that elemental problem with appellant's argument, it is not the only one. For the argument to ring true in this context, not only must appellee's counsel have believed 'hold harmless' language to equal support, but the divorce court must have also believed it or at least believed that, that was the gist of appellee's request. Given that appellee's counsel did not use the word support or even hint that support was the reason why 'hold harmless' language could not be used, there is a certain element of fantasy in appellant's assumption that the divorce court inserted such language so that a bankruptcy court could later divine it as meaning support. As discussed *supra*, there is no reason to believe that this fantasy was reality, and thus, this Court rejects appellant's argument that the 'hold harmless' language establishes the divorce court's intent to impose an obligation in the nature of support.

This leads to appellant's second reason for why the divorce court allegedly intended to create an obligation in the nature of support: the uneven split in the parties' martial credit card debt. Specifically, appellant asserts that the divorce court assigned appellee with $87,080.00 in debt, while appellant was assigned $42,344.00 in debt. (ECF No. 11 at 23.) Appellant accurately asserts that the divorce court did not distribute the martial credit card debt evenly. That is the extent of the accuracy in appellant's argument however. Despite appellant's assertions otherwise, there is a simple reason, evident from the permanent orders, why the divorce court assigned the marital credit card debt in this fashion. Specifically, the divorce court stated the following in assigning the debt:

> The court finds and concludes the distribution of the following unsecured debt is fair, equitable and appropriate *due to* the amount of debt the wife has paid since the parties physically separated, the lack of debt paid by the husband, and the distribution of assets and liabilities between the parties.

(ECF No. 11-1 at 70) (emphasis added). Just prior to making this statement, the divorce court found that appellant had "paid $88,839.00 of marital expenses since the parties physically separated. The credible evidence further proves [appellee] has made minimal payments since leaving the marital home and has not complied with the majority of his financial obligations subsequent to temporary orders …." (*Id*. at 69.)

In other words, prior to the divorce court making the uneven marital debt distribution in appellant's favor, the court found that appellant had carried the burden of an uneven payment of marital debt up to that point. Then, "due to" that unevenness in prior debt payments, the divorce court concluded that it would be "fair, equitable and appropriate" to assign appellee a greater amount of the remaining marital debt. (*See* ECF No. 11-1 at 70.) Thus, contrary to appellant's assertion that the divorce court did this to "eliminate the need for spousal support" (*see* ECF No. 11 at 22), it is clearly evident that the divorce court made this distribution in an attempt to correct the imbalances

in the parties' payment of their marital debt up to that point. As such, the fact that some of the marital debt assigned to appellee may have been in appellant's name only (*see id.* at 23), is irrelevant, given that appellant had already paid $88,839.00 of marital expenses, while appellee had made "minimal payments" (*see* ECF No. 11-1 at 69). As a result, this Court finds that the divorce court's intent in making the uneven distribution of marital debt was to remedy the pre-existing imbalances in the parties' payment of such debt to that point, rather than to impose an obligation in the nature of support.

In addition to the divorce court's intent in imposing an obligation, the Tenth Circuit has instructed that a court should look to the "substance" of the obligation. *In re Sampson*, 997 F.2d at 725. "The critical question in determining whether the obligation is, in substance, support is the function served by the obligation at the time of the divorce." *Id*. (quotation omitted). "This may be determined by considering the relative financial circumstances of the parties at the time of the divorce." *Id*. at 726. In *Sampson*, the Tenth Circuit concluded that the "substance" of the obligation was support because the plaintiff "had an obvious need for support," she had no income, her employment opportunities were limited due to her health and lack of education, and the defendant was "clearly in a position to provide support." *Id*.

Here, the circumstances are entirely different. Although appellant may be in "need of support," in light of the financial information on record, which is the same as that before the divorce court and Bankruptcy Court, appellee is also in need of support, or, at the very least, not in a position to provide support. Notably, the divorce court found that "the parties have lived well beyond their financial means," and the parties' debt to income ratio and lack of assets made them "for all practical purposes bankrupt." (ECF No. 11-1 at 63.) In addition, although the divorce court found that

appellee had gross monthly income of $3,848.46, appellee's financial statements reflect estimated monthly expenses of $7,703.60. (ECF No. 11-1 at 63, 87.) In other words, both parties are in need of support, but, sadly, neither party is in a position to provide the other with such support. This case is further different from *Sampson* because the evidence reflects, and the divorce court found, that appellant had employment opportunities and was well educated. (*Id.* at 64); *cf. Sampson*, 997 F.2d at 726. Thus, the facts of *Sampson* do not demonstrate any clear error in the Bankruptcy Court's decision.

The Tenth Circuit has also explained that the following considerations are relevant to the inquiry as to whether an obligation is support: (1) a court may presume that an obligation is in the nature of support, if the spouse needs support; (2) if there are minor children or an imbalance of income, an obligation is likely to be in the nature of support; (3) it is indicated that an obligation is in the nature of support if payments are made directly to the recipient and paid in installments over a substantial period of time; and (4) if an obligation terminates on remarriage or death its nature as support is indicated. *In re Goin*, 808 F.2d at 1392-93.

Here, as discussed *supra*, the first factor (need for support) is arguably in appellant's favor.[2] However, even if this Court were to put aside the problem that appellee is not in a position to support

---

[2] This Court queries, however, at least on the current record, appellant's assertion that, with appellee's payment of the obligations in dispute, she would be able to maintain her monthly expenses. (*See* ECF No. 11 at 21-22.) To the extent this assertion is meant to suggest that appellant would be debt free with appellee's financial support, the evidence does not support it. Notably, appellant's financial statements reflect that, at the time of her divorce, appellant had monthly expenses of $6,772.90, and minimum payments for unsecured debt of $1,507.28, resulting in a monthly shortfall of $5,591.63. (ECF No. 11-1 at 76-77.) Assuming for simplicities' sake that the result of the permanent orders was to remove all of the minimum unsecured debt payments from appellant's responsibility, this still would leave a monthly shortfall of $4,084.35 ($5,591.63 minus $1,507.28). Thus, in order for appellee's payment of the divorce obligations to result in appellant maintaining her monthly expenses, appellant would need to drastically cut her monthly expenses. There has, however, been no evidence presented that such a radical cut in appellant's monthly expenses has occurred.

appellant, none of the remaining considerations weigh in appellant's favor. There are no minor children at issue in this case, and the divorce court's finding—that appellee's gross monthly income was $3,848.46 while appellant's was $3,250—refutes any suggestion that an income imbalance existed between the parties. Next, appellee's payment of the obligations at issue here are not made directly to appellee, and they are not paid in installments over a substantial period of time. Rather, the payments will be made to whichever entity is the holder of the pertinent marital debt, and, although there is no evidence as to how or when appellee will make payments on the debt, there is certainly no installment schedule set by the divorce court for the payment of the debt. Finally, appellee's obligations here do not terminate upon appellant's remarriage or death, rather, they will terminate if and when appellee has paid down all of the debt. This is understandable due to the fact that appellee's obligations are payments to third-party debtholders.

In this light, in totality under *Goin*, appellant has failed to carry her burden to show that the obligations in dispute here are in substance support. In addition, as discussed *supra*, appellant has failed to show that the intent of the divorce court was to create obligations in the nature of support.[3] As a result, even if this Court were to review the Bankruptcy Court's decision *de novo*, the Bankruptcy Court was clearly correct in its decision, and thus, the Bankruptcy Court's decision is AFFIRMED.[4]

---

[3] Appellant also argues that the Bankruptcy Court clearly erred in relying upon the divorce court's denial of maintenance and the divorce court stating that the debt distribution was in the nature of property division under state law. (ECF No. 11 at 16-21, 24-25, 27-29.) Given that appellant has failed to meet her burden even when these factors are not considered, this Court need not address whether the Bankruptcy Court clearly erred in considering them.

[4] Because this Court believes the circumstances dictate it, this Court makes the following additional observation about this case. The obligations at issue here appear to create somewhat of a quandary for appellee if his intent is to discharge all of his liability with respect to them through bankruptcy. As discussed, this is NOT due to the fact that the obligations are in the nature of support, but instead due to the

**IV.     Conclusion**

For the reasons set forth herein, the Court AFFIRMS the decision of the Bankruptcy Court. The Clerk is instructed to enter Judgment in favor of appellee, and CLOSE this case. This case is REMANDED to the Bankruptcy Court for further proceedings consistent with this Opinion.

**SO ORDERED.**

DATED this 8th day of December, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

'hold harmless' language. As further discussed, the hold harmless language has no relevance as to whether or not the obligations are in the nature of support. However, the language may still play a role in appellee's ability to discharge his obligations. As explained, 'hold harmless' language is designed to ensure that the party being held harmless is not subject to liability for a transaction. However, should any attempt to discharge appellee's obligation to hold appellee harmless from the underlying debts be successful the 'hold harmless' language will be effectively nullified. Perhaps unsurprisingly, this is not the first time that a debtor has attempted to discharge in bankruptcy a 'hold harmless' obligation imposed during a divorce proceeding. As an example, in *In re Corn*, 2008 WL 2714404 (Bankr. W.D. Tex. July 9, 2008), the bankruptcy court was faced with an identical question: whether the debtor could discharge her obligations to hold her former spouse harmless for various debts, including credit card debt. *Id*. at *1. The bankruptcy court found that, although the obligations were not covered by § 523(a)(5) because they were not domestic support obligations, they were non-dischargeable under § 523(a)(15), which provides that a discharge does not discharge a debtor from any debt to a former spouse incurred during the course of a divorce. *Id*. at *3-6; *see also* 11 U.S.C. § 523(a)(15). At the hearing before the Bankruptcy Court in this case, appellant's counsel was asked whether a § 523(a)(15) claim was being brought, and counsel stated that one was not. (ECF No. 11-1 at 130:21-24.) Now that this case is returning to the Bankruptcy Court, this Court will leave for the Bankruptcy Court to decide whether appellant may revisit the basis for seeking the non-dischargeability of the relevant obligations.